UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIYAM AKMAL,<br><br>           Plaintiff,<br><br>      v.<br><br>GLOBAL SCHOLAR, et al.,<br><br>           Defendants. | CASE NO. C14-1859JLR<br><br>ORDER ON MOTION TO DISMISS |

## I. INTRODUCTION

Before the court is Defendant GlobalScholar LLC's ("GlobalScholar")[1] motion to dismiss pro se Plaintiff Mariyam Akmal's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for a more definite statement under Rule 12(e). (2d MTD (Dkt. # 27); *see also* Am. Compl. (Dkt. # 26).) Ms. Akmal has filed nothing in opposition. (*See* Dkt.) The court has reviewed the

---

[1] GlobalScholar LLC is incorrectly named in the caption as "Global Scholar." (*See* 1st MTD (Dkt. # 10) at 1.)

ORDER- 1

motion, GlobalScholar's reply memorandum (Reply (Dkt. # 28)), the amended complaint, the record, and the relevant law.  Being fully advised, the court GRANTS GlobalScholar's motion and DISMISSES Ms. Akmal's claims against GlobalScholar with prejudice and without leave to amend.

## II.   BACKGROUND

This is a case involving allegations of employment discrimination.  According to her amended complaint,[2] Ms. Akmal worked for GlobalScholar for several weeks in the spring of 2012.  (*See* Am. Compl. ¶¶ 47, 52, 64, 66.)  Ms. Akmal learned about a position at GlobalScholar through a staffing agency called Greythorn that is oriented toward technology workers.  (*See id.* ¶¶ 17, 35, 45-47.)  Ms. Akmal interviewed with GlobalScholar over the phone in early March 2012.  (*See id.* ¶¶ 45-46.)  In addition, she attended an in-person interview on March 13, 2012.  (*Id.* ¶¶ 35, 46.)  During the in-person interview, a GlobalScholar employee named Gunny asked Ms. Akmal about the origin of her last name, and Ms. Akmal told Gunny that she is a Muslim.  (*Id.* ¶¶ 3, 35.)  Ms. Akmal is also African American and over the age of 40.  (*Id.* ¶¶ 4, 14.)

---

[2] The court addresses in this order only the plausibly pleaded, relevant factual allegations in Ms. Akmal's amended complaint.  In addition to such allegations, the amended complaint contains numerous conclusory statements (*see, e.g.*, Am. Compl. ¶ 79 ("Defendants discriminated against Plaintiff Akmal in violation of Title VII when it [sic] terminated her because of their erroneous belief that due to being an adherent of the religion of Islam, that she has ties to terrorism, is a national security concerns [sic], and/or is a danger or threat to others.")) and allegations about events and conduct for which Ms. Akmal pleads no plausible connection to her present claims (*see, e.g.*, *id.* ¶¶ 36-42 (describing a series of events in which a police officer pulled Ms. Akmal over and ticketed her, Ms. Akmal hired a lawyer to defend her, and the lawyer allegedly defrauded Ms. Akmal)).  The court disregards those allegations.  *See infra* Part III.A.

After the in-person interview, GlobalScholar apparently offered Ms. Akmal a position that she accepted. (*See id.* ¶¶ 46-48, 52.) She was initially set to start in late March, but GlobalScholar moved her start date to April 2, 2012. (*See id.* ¶ 47.) GlobalScholar also asked Ms. Akmal to attend a training session in Atlanta, Georgia, that would begin on that day. (*See id.* ¶ 48.) Ms. Akmal was to pay to attend that session from her own funds and then be reimbursed when she returned. (*Id.* ¶ 49.) She was short of funds, however, and because of the change to her start date, her first paycheck would not arrive until late April. (*See id.* ¶¶ 47, 49.) As a result, she asked Greythorn for an advance on her first paycheck. (*Id.* ¶ 49.) Greythorn declined that request and instead paid for Ms. Akmal to attend training in Atlanta. (*See id.* ¶ 50.) While in training, Ms. Akmal met a Caucasian GlobalScholar employee named Megan who had started work three weeks before training and therefore "had three [paid] weeks to learn the training materials." (*Id.* ¶ 51.)

Ms. Akmal began work at GlobalScholar's Bellevue, Washington, office on April 9, 2012, following the completion of week-long training in Atlanta. (*See id.* ¶ 52.) Things went well early on. (*See id.* ¶¶ 57-61, 63.) GlobalScholar managers were pleased with Ms. Akmal's work, and in late April 2012, assigned her to a special project and also requested her resume in order to inform a client that she would be working on a particular project for the client. (*See id.* ¶¶ 58-61.) Ms. Akmal was concerned that she was losing her current position, but one of her supervisors, Ron Darin, assured her that "it's a compliment." (*See id.* ¶¶ 58, 60.)

A few days later, Ms. Akmal "was bombarded with what seemed to her to be a lot of *extra* work." (*Id.* ¶ 62 (emphasis in original).) Ms. Akmal's schedule had become busy as a result of being assigned to multiple teams. (*See id.* ¶¶ 58-60, 62-65.) Some of her tasks were on different projects or for different clients, and consequently, Ms. Akmal often had to switch tasks, which she found inefficient. (*See id.* ¶¶ 62, 64-65.) On May 2, 2012, she called her other supervisor, Dale Hill, and asked him if he could temporarily remove some of her responsibilities or, alternatively, reorganize her responsibilities so that she did not have to switch tasks as often. (*See id.* ¶¶ 64-65; *see also id.* ¶ 58.) Mr. Hill declined that request. (*Id.* ¶ 65.) Shortly thereafter, Ms. Akmal received a call from GlobalScholar's Atlanta office, "notifying her that they were terminating her contract" and providing no explanation other than "this isn't working." (*Id.* ¶ 66.)

Ms. Akmal was suspicious about the circumstances surrounding her termination. (*See id.* ¶ 67 (noting that four GlobalScholar employees made a comment "which seemed to reference the Islamic State" and that she therefore "went into defensive mode").) This suspicion prompted her to send GlobalScholar and Greythorn emails requesting preservation of all records related to her pending possible litigation. (*See id.* ¶¶ 67, 70.) Further, in June 2010, Ms. Akmal filed a charge with the Washington Human Rights Commission ("WHRC"). (*Id.* ¶ 72.) WHRC declined to pursue her charge and forwarded it to the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 20.) Ms. Akmal received a notice of right to sue from the EEOC in September 2014. (*Id.* ¶ 21.)

On December 9, 2014, Ms. Akmal filed her original complaint in this case and named GlobalScholar and Craig Chesser. (*See* Compl. (Dkt. # 4).)[3] She alleged claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; 42 U.S.C. § 1981 ("§ 1981"); and the Washington Law Against Discrimination ("WLAD"), RCW ch. 49.60, for racial, religious, age, and gender discrimination and retaliation. (*See id.* at 1-2.) On April 2, 2015, Ms. Akmal requested a 120-day extension of time to effect service of the complaint on the ground that she had recently obtained a lawyer who needed time to get acquainted with her case. (*See* 4/2/15 Mot. (Dkt. # 6).) The court granted her an additional 30 days to effect service (*see* 4/6/15 Order (Dkt. # 7)); however, Ms. Akmal never filed satisfactory proof of service (*see* Dkt.; 5/28/15 Order (Dkt. # 14)). As a result, the court dismissed the claims against Mr. Chesser. (5/28/15 Order at 1-2.) The court did not dismiss the claims against GlobalScholar because in the meantime GlobalScholar had appeared and filed a motion to dismiss. (*Id.* at 2.)

On May 27, 2015, GlobalScholar filed its first motion to dismiss. (1st MTD (Dkt. # 10).) The next day, Ms. Akmal filed a motion requesting additional time to respond to the motion to dismiss, again stating that her new lawyer needed time to get up to speed on her case. (*See* 5/28/15 Mot. (Dkt. # 13) at 1.) The court extended the time for response to June 22, 2015, but Ms. Akmal missed that deadline as well. (*See* 6/18/15 Order at 1-2.) On June 25, 2015, Ms. Akmal requested another extension of the already passed deadline, this time citing health problems to justify her tardiness. (*See* 6/25/15 Mot. at 1-

---

[3] Ms. Akmal is proceeding in forma pauperis in this matter. (*See* Dkt. # 3.)

ORDER- 5

2.)  The court granted Ms. Akmal until July 6, 2015, to respond.  (6/29/15 Min. Order.)  Once the briefs were in, the court granted GlobalScholar's motion on the basis that Ms. Akmal's original complaint failed to allege facts sufficient to support any of her claims.  (*See* 7/13/15 Order (Dkt. # 25) at 4-5.)  The court, however, granted Ms. Akmal leave to amend her complaint.  (*Id.* at 6-7.)

On July 25, 2015, Ms. Akmal filed the amended complaint, which is the operative complaint at this time.  (*See* Am. Compl.)  The amended complaint asserts claims for race, age, sex, and religious discrimination and retaliation in violation of Title VII, § 1981, and WLAD.  (*See id.* ¶¶ 76-103.)  On August 17, 2015, GlobalScholar filed its second motion to dismiss.  (*See* 2d MTD.)  In this motion, GlobalScholar again argues Ms. Akmal has not pleaded facts sufficient to support any of her claims against it.  (*See id.* at 2, 6.)  GlobalScholar also asks that dismissal be with prejudice and without leave to amend.  (*See id.* at 15; Reply.)  Ms. Akmal has not responded.  (*See* Dkt.)  GlobalScholar's second motion to dismiss is now before the court.

### III.   DISCUSSION

**A.   Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Id.* at 678. Although the pleading standard announced by Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

**B.     Ms. Akmal's Amended Complaint**

Ms. Akmal's amended complaint contains four "claim[s] for relief": (1) discrimination on the basis of religion, race, age, and sex in violation of Title VII; (2) discrimination on the basis of race in violation of § 1981; (3) discrimination on the basis of religion in violation of WLAD; and (4) retaliation for engaging in protected activity in violation of Title VII. (Am. Compl. at 26-34.) The court addresses each of these claims below and finds that Ms. Akmal's amended complaint fails to plausibly plead any of them.

1. Religion, race, age, and sex discrimination under Title VII and § 1981

Courts evaluate discrimination claims under both Title VII and § 1981 using the *McDonnell Douglas* framework.[4] *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003). That framework requires the plaintiff to make out a prima facie case showing (1) that he or she was a member of a protected class, (2) that he or she was qualified for and performing adequately in the position in question, (3) that he or she suffered an adverse employment action, and (4) either (a) that similarly situated employees outside the protected class were treated more favorably, or (b) that other circumstances surrounding the adverse action give rise to an inference of discrimination. *See Cornwell*, 439 F.3d at 1028; *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). Ms. Akmal fails to allege facts sufficient to show at least the fourth element of this framework.[5]

---

[4] Ms. Akmal's age discrimination claim is properly analyzed under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, not Title VII, because age is not a protected status under Title VII. *See* 42 U.S.C. § 2000e-2(a) (prohibiting discrimination on the basis of "race, color, religion, sex, or national origin"). Nevertheless, the analysis does not differ under the ADEA, as courts use the *McDonnell Douglas* framework to evaluate discrimination claims under the ADEA as well as under Title VII and § 1981. *See Shelly v. Geren*, 666 F.3d 599, 607-08 (9th Cir. 2012).

[5] In a case that pre-dates the Supreme Court's decisions in *Iqbal* and *Twombly*, the Ninth Circuit held that trial courts should not use the *McDonnell Douglas* framework to evaluate discrimination claims at the pleading stage but should instead inquire only whether the complaint offers a short and plain statement showing that the plaintiff is entitled to relief. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding, before *Iqbal* and *Twombly*, that a Title VII complaint need not contain specific facts establishing a *McDonnell Douglas* prima facie case). Several district courts in this circuit have since held that *Iqbal* and *Twombly* impliedly overruled *Gilligan*. *See*

The termination of her contract constitutes the principal adverse employment action that Ms. Akmal identifies in her amended complaint. (*See* Am. Compl. ¶¶ 4, 79.) Yet the amended complaint provides no non-conclusory factual allegations linking the termination to Ms. Akmal's race, age, sex, or religion. Ms. Akmal alleges that GlobalScholar terminated her contract after she asked for her workload to be reduced or reorganized. (*See id.* ¶¶ 64-66.) She fails to allege, however, that GlobalScholar behaved differently toward a similarly situated employee outside one or more of her protected classes. *See Cornwell*, 439 F.3d at 1028. Nor does she identify other circumstances giving rise to an inference that GlobalScholar discriminated against her. *See Peterson*, 358 F.3d at 603. She alleges that GlobalScholar knew she was a Muslim (*see* Am. Comp. ¶¶ 3, 35), and that some GlobalScholar employees made comments "which seemed to reference the Islamic state" (*id.* ¶ 67), but she does not allege that anyone at

//

//

---

*Borja-Valdes v. City & Cty. of S.F.*, No. 3:14-cv-04168-CRB, 2015 WL 5522287, at *8 (N.D. Cal. Sept. 18, 2015) (collecting cases). Whatever *Gilligan*'s status may be today, *Iqbal* and *Twombly* at least require an employment discrimination plaintiff to plead facts from which the court can reasonably infer a causal connection between the plaintiff's protected status and an adverse employment action. *See, e.g.*, 42 U.S.C. § 2000e(a) ("It shall be an unlawful employment practice for an employer-- (1) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, *because of* such individual's [protected status.]" (emphasis added)); *Mayes v. Kaiser Foundation Hosps.*, 917 F. Supp. 2d 1074, 1079-80 (E.D. Cal. 2013) (citing *Swierkiewicz* but dismissing the plaintiff's employment discrimination claims because the plaintiff "provides no meaningful detail suggesting the termination was because of his race or sex"). The fourth element of the *McDonnell Douglas* framework pertains primarily to this causal connection; thus, when the court states that Ms. Akmal has failed to satisfy the fourth element of the *McDonnel Douglas* framework, the court also means that Ms. Akmal has not plausibly pleaded a causal connection between her protected status and an adverse employment action.

ORDER- 9

GlobalScholar said or did anything negative regarding her religion, race, sex, or age.[6] Ms. Akmal's allegations therefore do not support a reasonable inference that GlobalScholar terminated her contract because of her protected status.

Ms. Akmal also suggests that GlobalScholar subjected her to an adverse employment action when it forced her to start her job by attending training in Atlanta. (*See id.* ¶¶ 51, 83.) She contrasts this treatment with the experience of Megan, the Caucasian employee whom Ms. Akmal met in Atlanta. (*See id.*) Megan worked for three weeks before attending training in Atlanta, which Ms. Akmal suggests gave Megan additional paid time to learn her job. (*See id.*)

To begin, the manner in which Ms. Akmal began her job does not constitute an adverse employment action. *See Cornwell*, 439 F.3d at 1028. GlobalScholar at most asked Ms. Akmal to learn her job quickly, yet the court is not aware of any case holding that asking an employee to learn a job quickly is an adverse employment action. Even if it were adverse, moreover, Ms. Akmal fails to allege facts sufficient to show a causal connection to a protected status. *See Mayes*, 917 F. Supp. 2d at 1079-80. She identifies one Caucasian employee, Megan, who worked for three weeks before attending training, but such allegations fall short of showing that another similarly situated employee was treated more favorably. Ms. Akmal alleges nothing about Megan other than she is Caucasian, works for GlobalScholar, and was training in Atlanta. (*See* Am. Compl.

---

[6] Thus, although she alleges that GlobalScholar employees made comments "which seemed to reference the Islamic State" (Am. Compl. ¶ 67), she does not allege what those comments were, to whom they were directed, or whether they had any relation to her.

ORDER- 10

¶ 51.) These allegations fail to show that Megan is similarly situated with respect to Ms. Akmal. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (stating that valid comparators must be similar to the plaintiff "in all material respects"). In sum, then, Ms. Akmal has not plausibly pleaded her Title VII and § 1981, and so the court must dismiss those claims.

    2. <u>Religious discrimination under WLAD</u>

Ms. Akmal's WLAD religious discrimination claim pertains to her allegation that a GlobalScholar employee named Gunny asked her about the origin of her name during her in-person interview. (*See* Am. Compl. ¶¶ 3, 35, 88.) That question, she claims, amounts to a prohibited pre-employment inquiry under RCW 49.60.180(4) and .200 because it elicited a response informing Gunny that she is a Muslim. (*See id.*) The statutory language betrays Ms. Akmal's claim, however. Pursuant to RCW 49.60.180(4) and .200, employers and employment agencies may not "make any inquiry in connection with prospective employment, which expresses any limitation, specification, or discrimination as to . . . creed . . . ." RCW 49.60.180(4), .200. A question about the origin of an applicant's name cannot, without more, reasonably be said to express a "limitation, specification, or discrimination" as to religion merely because the question elicits a response about the person's religion. This conclusion has particular force here, where GlobalScholar hired Ms. Akmal shortly after learning her religion. (*See* Am. Compl. ¶¶ 35, 46-47.) The court therefore dismisses Ms. Akmal's WLAD claim as not plausibly pleaded.

### 3. Retaliation under Title VII

Finally, Ms. Akmal claims that GlobalScholar retaliated against her for engaging in protected activity. (*See id.* ¶¶ 7-9, 90-97.) "To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008); *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1026 (D. Nev. 2013) (applying this framework in evaluating a motion to dismiss); *see also supra* n.5. "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). Ms. Akmal's retaliation claim fails because she has not pleaded facts showing a causal connection between protected activity and an adverse employment action. Ms. Akmal identifies the following as her protected activity: (i) a lawsuit that she filed against a different employer before she began working for GlobalScholar and (ii) a Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, suit that she filed against the Transportation Safety Administration, also before she began working with GlobalScholar. (*See* Am. Compl. ¶¶ 7-9, 90-97.) Even assuming that her lawsuits constitute protected activity, Ms. Akmal alleges nothing from which the court could reasonably infer that GlobalScholar knew about either lawsuit, let alone fired or otherwise mistreated Ms. Akmal because of either lawsuit.

Ms. Akmal also alleges that she endured retaliation after she filed her charge with the WHRC in this matter; however, these allegations are conclusory. (*See id.* ¶¶ 9, 94

("[The Defendants] are still targeting and retaliating against the Plaintiff because she reported their behavior to an investigative civil rights agency and because she is pursuing legal action.").)  She identifies neither the adverse action she endured nor any facts connecting the alleged retaliation to GlobalScholar.  (*See id.*)  These allegations therefore afford no basis for denying GlobalScholar's motion.  Accordingly, the court dismisses Ms. Akmal's retaliation claim.

**C.     Defendants Craig Chesser and Greythorn**

Ms. Akmal's amended complaint also attempts to assert claims against Craig Chesser and Greythorn.  (*See id.* at 1, ¶¶ 17-18.)  As with her claims against GlobalScholar, however, Ms. Akmal does not plead facts sufficient to support these claims.  Ms. Akmal alleges nothing about Mr. Chesser other than that he works for GlobalScholar and Greythorn.  (*See id.* ¶ 18.)  The amended complaint contains more information about Greythorn but no factual allegations from which the court could infer that Greythorn discriminated or retaliated against Ms. Akmal.  Under 28 U.S.C. § 1915(e), district courts have authority to review in forma pauperis complaints and must dismiss them if "at any time" it is determined that a complaint is frivolous or fails to state a claim for which relief may be granted.  28 U.S.C. § 1915(e)(2).  Having examined the amended complaint in detail, the court concludes that Ms. Akmal's claims against Mr. Chesser and Greythorn should be dismissed under § 1915(e) for failure to state a claim.

**D.     Dismissal with Prejudice**

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*,

316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Ninth Circuit has further instructed that a district court should not dismiss a pro se complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203 (9th Cir. 1988)); *see also Eminence Capital*, 316 F.3d at 1052 (noting that dismissal with prejudice is appropriate only if it would be "clear on de novo review that the complaint could not be saved by amendment").

      Here, the court finds dismissal with prejudice and without leave to amend is appropriate because it is absolutely clear that Ms. Akmal cannot cure the deficiencies in her amended complaint by amendment.  *See Akhtar*, 698 F.3d at 1212; *Eminence*, 316 F.3d at 20152.  The court previously dismissed Ms. Akmal's complaint for failure to allege sufficient facts and granted her leave to amend.  Ms. Akmal took advantage of that opportunity, but her amended complaint repeats the same error as it lacks facts sufficient to make any of her claims plausible.  Further, Ms. Akmal has had ample time to develop factual allegations to support her claims—she filed this case in December 2014 concerning events that allegedly took place in the spring of 2012.  (*See* Compl.; Am. Compl.)  Finally, although Ms. Akmal is pro se, she is an experienced pro se litigant who

ORDER- 14

is familiar with federal pleading standards, including as they apply to employment discrimination claims. *See Akmal v. City of Kent*, No. C13-0379JLR (W.D. Wash.) (entailing two successful motions to dismiss and final *sua sponte* dismissal); *Akmal v. Terra Staffing Group*, No. C13-5113BHS (W.D. Wash.) (involving successful motions to dismiss and final dismissal of federal employment discrimination claims following review of amended complaint); *Akmal v. Centerstance, Inc.*, No. C11-5378RJB (W.D. Wash.) (involving successful motions to dismiss federal employment discrimination claims). These factors make it absolutely clear to the court that Ms. Akmal cannot save her amended complaint by amendment.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS GlobalScholar's motion to dismiss and DISMISSES this case WITH PREJUDICE.

Dated this 9th day of October, 2015.

JAMES L. ROBART
United States District Judge

ORDER- 15